MERRITT v. SHALE-BRICK EXCHANGE OF CANTON.

(Supreme Court, Appellate Division, Fourth Department.   May 24, 1899.)

1. APPEAL—ERRORS URGED.

A party cannot, on appeal, urge errors which relate solely to one of two causes of action, where he, on a motion for a new trial, has shown, by the affidavits of the jurors, that the verdict was based in no part on the cause of action to which the errors relate.

2. FRAUD—EVIDENCE—DAMAGES.

A., being about to bid on paving work, applied to D. for quotations on brick. D. submitted a proposal, signed by himself as agent for defendant, which on the same day A. accepted, and informed D. that he would rely upon the prices stated in making his bid. Prior to such proposal, defendant had authorized D. to quote price for its brick, and two days prior thereto had telegraphed D. "that they would leave everything to him," in confirmation of a letter to the effect that they were pleased with his report, had written another agent not to do anything without consulting him, and stating that he hoped he could get their brick used on at least one street, and he would wire prices. In another letter he stated that he would give no one prices but him, and would depend on him to carry it through and look after his interest. After A. secured the contract for paving, and filed his bond, defendant repudiated the quotations of D., and told A. that D. had no authority to quote the prices, and that they would not furnish the brick at the price quoted. A. could not procure brick elsewhere, and entered into an agreement with defendant for the quantity of brick ordered of D., at an advanced price. *Held*, that A. was entitled to recover the difference between the amount he was compelled to pay for the brick and the price quoted by D.

Appeal from trial term, Niagara county.

Action by John A. Merritt, successor of John Hodge, as assignee of Charles Whitmore & Co., against the Shale-Brick Exchange of Canton, Ohio. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appealed. Affirmed.

The action was commenced on the 19th day of June, 1895, to recover damages alleged to have been sustained by the plaintiff's assignors, on account of the false and fraudulent representations of the defendant, by which such assignors were induced to and did make and enter into a contract with the defendant in the words and figures following, to wit:

"Lockport, N. Y., Sept. 13th, 1893.

"Memorandum of agreement by and between the Shale-Brick Exchange of Canton, Ohio, and Chas. Whitmore & Co., of Lockport, N. Y.: Chas. Whitmore & Co. to receive 2,500,000 repress shale brick, at $16.12 per M., f. o. b. cars Lockport, N. Y.; one million to be delivered within 50 days from date of this contract, at the rate of ten cars per day, if possible. Payments to be made every thirty days, on the 10th of each month, as per estimates upon work, or the entire amount within 90 days. The balance of order to be shipped on notice of Whitmore & Co., payments of which shall be made on the 10th of each month, as per estimate from the city. Shipment by Erie one-half million when directed by Whitmore & Co.               Shale-Brick Exchange, Canton, Ohio,
                                                    "Per W. B. Dager, Agent.

"Chas. Whitmore & Co."

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

P. F. King, for appellant.
A. K. Potter, for respondent.

McLENNAN, J. In the summer of 1893, the city of Lockport instituted proceedings to pave certain streets in said city with brick. The charter required that the contract for paving the streets should be let to the lowest bidder, and notices for bids were duly published for that purpose by the city. Charles Whitmore & Co., the assignors of the plaintiff, were contractors, and engaged in the business of taking contracts for public work. They put in a bid for the work at $2.02 per square yard, and agreed to furnish Canton shale repress brick. Such bid was accepted by the city of Lockport, and on the 16th day of September, 1893, said Charles Whitmore & Co. entered into contract with the city of Lockport, by which they undertook and bound themselves to do and perform their work for the price bid by them, and in all things in accordance with the plans and specifications, which were made a part of the contract made and executed by them; and on the same day said Charles Whitmore & Co. made and executed a bond in the penal sum of $86,750, by which they bound themselves to perform in all things the contract so made and entered into between them and the city of Lockport. When the plaintiff's assignors made the bid for the work in question, it was accompanied by a bond in the sum of $25,000, conditioned that, if the bid made by them was accepted by the city of Lockport, they would enter into contract with said city for doing the work at the price bid by them. Before the plaintiff's assignors made the bid for the work in question, it is clear that it was essential for them to know at what price they could obtain Canton shale repress brick, in case such brick specified by them in their bid should be accepted by the city, and they should be required to enter into contract for the same pursuant to such bid. To that end the plaintiff's assignors had negotiations with one W. D. Davis, who resided at Lockport, N. Y., in respect to the cost of such brick, and on the 20th day of August, 1893, they received from him the following proposal:

"Lockport, N. Y., Aug. 28th, 1893.

"Chas. Whitmore & Co., City—Gentlemen: In reply to yours of even date for prices on Canton shale brick to pave West Ave., East Main St., and East Ave., I quote you the following prices, f. o. b. cars Lockport, N. Y.:

| | | | Per M. |
|---|---|---|---|
| Canton standard sq. edge | | | $14 60 |
| " round edge, end cut | | | 15 10 |
| " " " repressed | | | 15 60 |

60 brick will lay one square yd.

"Yours, very repy.,     W. D. Davis,

"Agt. Shale-Brick Exchange, Canton, Ohio.

"I also guaranty prompt shipment of brick when ordered.     W. D."

On the same day the plaintiff's assignors sent the following communication to W. D. Davis:

"Lockport, N. Y., Aug. 28, 1893.

"To W. D. Davis, Agent Canton Shale Exchange: We, the undersigned, hereby accept the prices for Canton shale paving brick quoted us by yourself on even date, for paving Main St., East avenue, and West avenue, the same to govern our bidding on said improvement.     Chas. Whitmore & Co."

Proposals had been called for by the city, and bids were made for the proposed work on the 28th day of August, 1893, and all such bids were rejected, and new bids called for September 11, 1893, the date

when the plaintiff's assignors made the bid which was finally accepted by the city of Lockport, and in pursuance of which they entered into contract with the city.    On the 10th day of August, 1893, the defendant authorized W. D. Davis, in writing, to quote prices for the brick manufactured by them, and on the 26th day of August, 1893, the defendant sent a telegram to Davis to the following effect:  "Will leave everything to you.    Is it necessary for Dager to be there Monday? Answer."    This telegram apparently was in confirmation of a letter written by the defendant to Davis on the 23d day of August, 1893, which is as follows:

"Canton, Ohio, Aug. 23d, '93.

"W. D. Davis, Esq., Lockport, N. Y.—Dear Sir:  Your letter to hand, and glad to know that you have everything in good shape.  We wrote Mr. Joyce not to do anything in Lockport without consulting you, and not to interfere with your plans.  Dager may be in Tonawanda, Sunday.  If he is, he will arrange to meet you some place.  I will wire you Saturday about prices.  Sent samples to Clerk to-day.  Hope you can work in a street for our best standards.
"Yours,                        Shale-Brick Exchange,
"M. C. Barber, Sec. & Treas."

In a letter sent by the defendant to Davis, the date of which does not appear, the defendant says:

"We will give no one prices but you, and will depend on you to carry it through and look after our interest.  You can do it. · They beat us first clip. They won't be looking for us this time; so you will have a chance to fool them."

On the 12th day of September, 1893, after the plaintiff's assignors had made the bid for the work in question, which was accompanied by their bond for $25,000, conditioned that they would enter into contract for doing the work in case it was awarded to them, the plaintiff's assignors notified Mr. Davis in writing that they had taken the contract, and wanted the brick delivered to them as per his offer of August 28, 1893.    The evidence tends to show that the brick specified in the contract executed by the plaintiff's assignors could not reasonably be obtained of any other parties than the defendant.

After the plaintiff's assignors had made their bid for the work in question, which was accompanied by their bond for $25,000, another agent of the defendant, a Mr. Dager, appeared upon the scene, and informed the plaintiff's assignors that Mr. Davis had no authority to quote prices for defendant's brick, and that the defendant would not furnish the brick at the prices named by Davis.    The evidence tends to show that plaintiff's assignors believed what Dager said to them in regard to the authority of Davis, and reached the conclusion that Davis had acted without authority, and was not in a position to furnish the brick for which he had quoted prices.    At that time, as before seen, the plaintiff's assignors were in a position where they must procure the defendant's brick.    They had made their bid.    They had obligated themselves to enter into contract with the city, believing that they could get the brick at the prices quoted by Davis, and had no knowledge to the contrary until the authorized agent of the defendant, Mr. Dager, informed them that Davis was not authorized to quote prices for brick, and had no authority to represent the defendant. Under those circumstances, and in that situation, they made a con-

tract with the defendant, through the instrumentality of Mr. Dager, by which they promised to pay $16.12 per thousand for the same brick which Davis had offered to furnish at $15.60 per thousand.

The evidence is abundant to show that at the time Davis quoted prices to the plaintiff's assignors he was authorized to quote such prices, and that the plaintiff's assignors accepted such prices in good faith, and made their bid for the work in question believing that the brick for such work would be furnished to them at the price quoted by Davis. The evidence is also amply sufficient to justify the conclusion that the statement made by Dager to the plaintiff's assignors, that Davis had no authority to quote prices for the defendant's brick, was not only false, but it was known at the time it was made to be false, and was made for the purpose of defrauding the plaintiff's assignors, and compelling them to pay a higher price for brick than had been quoted to them by Davis, and in pursuance of which they bid for the work in question. In fact, the evidence tends quite clearly to show that Davis was held out to be an agent of the defendant for the very purpose of playing a trick upon the plaintiff's assignors, or others who might seek to deal with the defendant in the purchase of their brick for the work in question. The letters which passed between the defendant and Davis, the fact that he at the time was one of the aldermen and chairman of the committee on streets, taken in connection with the representations of the other representative of the defendant, clearly point to that conclusion.

The action was brought to recover the sum of 50 cents per thousand for the brick furnished by the defendant to the plaintiff's assignors, being the difference between the price quoted by Davis for such brick and the price which the plaintiff's assignors agreed to pay by their contract with the defendant. The plaintiff also sought to recover for damages claimed to have been sustained on account of the failure to deliver the brick according to the terms of the contract. Upon the motion for a new trial, the counsel for the defendant procured the affidavits of all the jurors, which stated, in effect, that no part of the verdict rendered by them was based upon any claim which arose under the second cause of action, but that the whole of said verdict was for the difference in the price of brick as quoted by Davis and the price which the plaintiff's assignors in fact paid. It seems clear, therefore, that none of the exceptions discussed by defendant's counsel which relate to the second cause of action need, under the circumstances, be considered, as they cannot avail the defendant here.

The evidence in this case is conflicting, but it seems to me that it is amply sufficient to justify the conclusion reached by the jury, that the contract entered into by the plaintiff's assignors was entered into by them because of the false and fraudulent representations made by the agents of the defendant; that the plaintiff's assignors relied upon such false statements; and that, by reason thereof, they sustained damage, which is fairly represented by the verdict rendered by the jury. There is a large mass of testimony in this case, much of it documentary, but it seems clear that such testimony presented a question of fact, to be decided by the jury, as to whether the contract entered into between the plaintiff's assignors and the defendant was

induced by the false and fraudulent representations of the defendant. The jury having, by their verdict, reached a conclusion adverse to the defendant, we think this court would not be justified in disturbing such verdict. There is no question of law involved as to the acceptance or rejection of evidence, or upon requests to charge by defendant's counsel, which in any way materially affects the cause of action upon which the plaintiff recovered; and the defendant having shown upon its motion, which is conceded, that the verdict of the jury was based solely upon the first cause of action, the defendant is not in a position to urge error in the rejection or reception of evidence, or in exceptions taken to the charge of the learned trial justice, which do not relate to said first cause of action.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs.    All concur.